**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780

February 18, 2020

LETTER TO THE PARTIES

      RE:    *Toni S. v. Commissioner, Social Security Administration*;
               Civil No. SAG-19-406

Dear Plaintiff and Counsel:

     On February 14, 2019, Plaintiff Toni S., who appears *pro se*, petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits. ECF 1. I have considered the SSA's motion for summary judgment and Plaintiff's response. ECF 15, 17. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

     Plaintiff filed her claim for benefits on September 11, 2014, alleging a disability onset date of December 24, 2009. Tr. 81, 88. Her claim was denied initially and on reconsideration. Tr. 102-05, 115-16. An Administrative Law Judge ("ALJ") held a hearing on September 19, 2017, at which Plaintiff was represented by counsel. Tr. 40-80. Following that hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 21-35. The Appeals Council denied Plaintiff's request for review, Tr. 1-5, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

     The ALJ found that Plaintiff suffered from the severe impairments of "sarcoidosis, arthritis, and status-post left flatfoot reconstruction." Tr. 24. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally push and pull with her left lower extremity. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, and scaffolds. She must avoid concentrated exposure to fumes, odors, dusts, and gases.

Tr. 27. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform her past relevant work as a security supervisor and satellite project

coordinator, and, in the alternative, that Plaintiff could perform other jobs existing in significant numbers in the national economy. Tr. 33-35. Accordingly, the ALJ determined that Plaintiff was not disabled. Tr. 35.

In her Complaint, Plaintiff argues that the "process of evaluating all the evidence," including her medical records and doctors' evaluations, did not happen in her case. ECF 1 at 6. Plaintiff asks "that [her] whole case be heard" so that she "can be fairly judge[d] according to [her] health and situation." *Id.* In her response, Plaintiff contends that the evidence from her doctors states "that [she] should not go back to work driving a bus and that [she] is disable[d]." ECF 17 at 2.[1] She further contends that the ALJ ignored this evidence, as well as the vocational expert's testimony in response to her attorney's questions. *Id.* at 4-6. Plaintiff also alleges that "[her] case was judged without having all of the facts and all of the evidence."[2] *Id.* at 6.

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the SSA's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, the ALJ's decision applied the correct legal standards and its conclusions are supported by substantial evidence.

---

[1] Plaintiff also asked for a jury to "see all of the evidence and judge for themselves." ECF 17 at 1. However, the Social Security Act does not permit jury trials for Social Security appeals. 42 U.S.C. § 405(g).

[2] It is unclear what facts or evidence Plaintiff believes the ALJ did not have. At the hearing, the ALJ disallowed a source statement as untimely. Tr. 42-43. The ALJ explained that the "additional written evidence from Dr. Maria Bella Natividad and Dr. Jeff B. Hales [was submitted] less than five business days before the scheduled hearing date," and that it was declined because it did not meet the requirements of 20 C.F.R. § 404.935(b). Tr. 21; *see* 20 C.F.R. § 404.935(b) (identifying circumstances under which the ALJ may accept late evidence, including where the SSA mislead the claimant, the claimant "had a physical, mental, educational, or linguistic limitation(s) that prevented [her] from informing the SSA about or submitting the evidence earlier," or other unusual circumstances such as serious illness, records being destroyed in a fire, or where the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing"). The Appeals Council must review additional evidence only if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). The Appeals Council noted that it considered Plaintiff's three requests for review of the ALJ's decision and a letter from Plaintiff. Tr. 4 (citing Exhs. 15-17B, 18E). In her letter to the Appeals Council, Plaintiff included a discussion of her husband's health issues, her health issues, the cost of her medications, and a prayerful request for reconsideration. Tr. 304-06. It appears that the Plaintiff did not discuss or submit additional evidence to the Appeals Council. Plaintiff also did not submit additional evidence to this court that she claims should have been considered.

Before reviewing the ALJ's decision in Plaintiff's case, it is worth explaining that the standard of review in any Social Security appeals case is couched in federal statute and case law. In her response, Plaintiff implies that the Commissioner incorrectly imposed his own standard in her case. ECF 17 at 5. Under 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." As explained by the Fourth Circuit:

> Under the Social Security Act, [the court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard. 42 U.S.C. §§ 405(g), 1383(c)(3); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). The issue before us, therefore, is not whether [Plaintiff] is disabled, but whether the ALJ's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Coffman*, 829 F.2d at 517.

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, a court does not review the evidence afresh; rather, it reviews the decision of the ALJ and evaluates whether the ALJ's decision is supported by the record. *See Theresa S. v. Saul*, Civil No. TMD-18-2850, 2020 WL 433861, at *4 (D. Md. January 28, 2020) (explaining that a court will not review the evidence in a Social Security appeal *de novo*, "or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner").

In Plaintiff's case, the ALJ proceeded in accordance with applicable law at the first two steps of the sequential evaluation. The ALJ ruled in Plaintiff's favor at step one, and determined that she had not engaged in substantial gainful activity between the amended alleged onset date and the date of the opinion. Tr. 24; *see* 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Plaintiff claimed prevented her from working. *See* Tr. 24-26; 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ determined that Plaintiff's obesity, right fifth digit sprain, esophagus hernia, mild gastritis, and affective mood disorder were not severe impairments. Tr. 24-25. After finding Plaintiff's sarcoidosis, arthritis, and status-post left flatfoot reconstruction to be severe, Tr. 32, the ALJ continued with the sequential

evaluation and considered, in assessing Plaintiff's residual functional capacity ("RFC"), the extent to which her impairments limited her ability to work.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria of any listings. Tr. 27. Plaintiff argues that she meets the listings for sarcoidosis, rheumatoid arthritis, and depression because those impairments are listed in the SSA's Listing of Impairments. ECF 17 at 3-4. However, to meet a listing, "every element of the listing must be satisfied." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 391 (D. Md. 2000) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citing SSR 83-19). The claimant bears the burden of proof at the first four steps of the sequential evaluation, including the listing analysis at step three. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (noting that the burden rests with the claimant, through the first four steps of the sequential evaluation, to present evidence establishing disability during the relevant period).

In particular, the ALJ identified and considered Listings 1.02 (major dysfunction of a joint), 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.04 (disorders of the spine). With respect to Listing 1.02, the ALJ explained that Plaintiff's impairment did not result in ineffective ambulation or the inability to perform fine and gross movements effectively. *Id*. The ALJ explained that Plaintiff did not meet Listing 1.03 also because of her ability to ambulate effectively. *Id*. Regarding Listing 1.04, the ALJ noted that Plaintiff did not meet any of the three subsections because the record did not contain a positive straight-leg raise test in the sitting and supine positions, a requirement under Listing 1.04A, spinal arachnoiditis as required under Listing 1.04B, or the inability to ambulate effectively as required to meet Listing 1.04C. *Id*.

The ALJ did not evaluate Plaintiff's sarcoidosis under the 3.00 listings for respiratory impairments. Plaintiff contends that her sarcoidosis "keeps [her] bed written [sic] two weeks out of a month, constantly needing inhalers, and breathing treatments to clear [her] airways." ECF 17 at 3. However, the ALJ's RFC discussion of Plaintiff's sarcoidosis, with detailed citations to the record, demonstrates both that the ALJ considered Plaintiff's respiratory impairment and that the record lacked factual support that a listing could be met. Tr. 31; *see Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (explaining that the "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments"). The ALJ also noted Plaintiff's participation as a singer in multiple choirs. Tr. 25-26, 28; *see* Tr. 62-63 (Plaintiff testifying at the hearing that she can sing "as long as I have my inhaler" and that she "take[s] it before and definitely after [singing]").

The ALJ did not evaluate Plaintiff's rheumatoid arthritis under Listing 14.09 for inflammatory arthritis. The ALJ's discussion of the record demonstrated that it lacked factual support that Plaintiff met any of Listing 14.09's four subsections. To satisfy Listing 14.09A, an

individual must show "[p]ersistent inflammation or persistent deformity" of a peripheral joint resulting in either the inability to effectively ambulate or perform fine and gross movements. To satisfy Listing 14.09B, an individual must show "[i]nflammation or deformity in one or more major peripheral joints" with both (1) involvement of two or more organs or body systems and (2) at least two constitutional symptoms or signs ("severe fatigue, fever, malaise, or involuntary weight loss"). Listing 14.09C requires "ankylosing spondylitis or other spondyloarthropathies" shown by medically acceptable imaging. Finally, Listing 14.09D is satisfied by showing "[r]epeated manifestations of inflammatory arthritis with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" as well as a marked limitation in activities of daily living, the ability to maintain social functioning, or the ability to maintain concentration, persistence, or pace. As discussed, the ALJ noted Plaintiff's ability to ambulate effectively. Furthermore, Plaintiff has not alleged, and the record does not support, that she was unable to perform fine and gross movements, that her organs or body systems were affected by her arthritis, that she experienced constitutional symptoms or signs, or that medical imaging showed ankylosing spondylitis or other spondyloarthropathies. Lastly, the ALJ noted that Plaintiff did not have more than a mild limitation in any area of functioning. *See* Tr. 25-26.

The ALJ also did not evaluate Plaintiff's depression under Listing 12.04 (depressive, bipolar and related disorders). At step two, the ALJ permissibly found that Plaintiff's depression was a non-severe impairment. *See* Tr. 25-26. In making this finding, the ALJ considered Plaintiff's mental functioning as required by 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 (2018). The technique requires analysis of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairment meets Listing 12.04 by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A)(2). Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). A claimant must show extreme limitation in one area, or marked limitation in two areas, to be deemed to have met the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.04(B) (2018).

Here, the ALJ assigned a rating to the paragraph B criteria, citing substantial evidence in the record, and found that Plaintiff had only a "mild" limitation in the first three functional areas, and no limitation in the area of adapting or managing oneself. Tr. 25-26. Therefore, the ALJ permissibly determined that Plaintiff's depression was not a severe impairment at step two, and the ALJ was not required to consider Plaintiff's mental impairment under Listing 12.04 at step three. *See Cook*, 783 F.2d at 1172.

In considering Plaintiff's RFC, the ALJ determined that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." Tr. 28; *see Chater*, 76 F.3d at 594 (explaining the Fourth Circuit's two-part test for evaluating a claimant's subjective complaints).

The ALJ's analysis relied upon Plaintiff's own reports to contradict her allegations of her symptoms' severity. The ALJ noted that "[t]he array of activities engaged in by the claimant, and of which she is capable, is inconsistent with the claimant's allegations as to the extent of her work-related limitations." Tr. 28 (citing to Plaintiff's activities of daily living, including preparing her own meals, leaving the house independently, driving, and attending church); *see also* Tr. 244-51 (Plaintiff's self-report of her function, noting that some activities take her longer than they used to, and documenting her ability to dress, bathe, prepare her own meals, do household chores, go to church four to five times a week, shop weekly for "everything I need," sing, and use her iPad daily to look for employment).

The ALJ reviewed the medical evidence, beginning with Plaintiff's injury sustained in December of 2009. Tr. 29. The ALJ summarized medical records detailing Plaintiff's knee, ankle, and back pain, Tr. 29-30, left flatfoot reconstructive surgery and recovery, Tr. 30-31, and sarcoidosis, Tr. 31. The ALJ noted that imaging studies frequently revealed mild findings. *See, e.g.*, Tr. 29 ("x-rays of the lumbar spine showed small osteophytes at several levels consistent with mild degenerative changes"), *id.* ("MRI of the thoracic spine showed mild degeneration at T1-2, but revealed no evidence of disc herniation or spinal stenosis"), *id.* ("[ankle] x-rays revealed soft tissue swelling, but no fracture"), Tr. 30 ("X-rays revealed degenerative changes of the T11 and T12 endplates and degenerative changes at C5-6. However, the claimant otherwise had a normal gait and stance."). The ALJ further noted that Plaintiff "struggled with ambulation after her foot surgery, but otherwise has frequently ambulated normally upon examination." Tr. 31 (citing to Exhs. 2F, 4F, 9F, 14F, and 15F). Therefore, the ALJ found that, although Plaintiff had used assistive devices at times, "the medical evidence of record does not warrant including a restriction for the use of a cane or other assistive device in [Plaintiff's] [RFC]." Tr. 30.

The ALJ discussed Plaintiff's sarcoidosis, noting that the "medical evidence of record indicat[ed] relatively mild findings in the claimant's lungs." Tr. 31. The ALJ noted that medical examinations showed "ground glass infiltrate and nodules," and "a mild obstructive and restrictive defect." *Id.* The ALJ noted that in a December 2014 examination, Plaintiff's lungs had exhibited minimal wheezing and rhonchi without rales or crackles, and in January 2015, she exhibited rales and crackles without wheezing or rhonchi. *Id.* The ALJ further noted that Plaintiff's lungs "were clear to auscultation" in June and November of 2016, and that "a pulmonary function test revealed a mild obstructive defect and a mild decrease in gas exchange, but her lung volumes were within normal limits." *Id.*

Finally, the ALJ assigned weight to the opinions rendered by examining and non-examining medical sources. The ALJ gave partial weight to the State agency consultants'

opinions that Plaintiff was capable of performing light work with few postural limitations, because "the evidence supports additional restrictions in the claimant's [RFC] for environmental limitations for exposure to pulmonary irritants." Tr. 31. Therefore, the ALJ added a restriction to Plaintiff's RFC to "avoid concentrated exposure to fumes, odors, dusts, and gases." *Id*. The ALJ also gave partial weight to the consultative examiner's opinion that Plaintiff had a cognitive impairment, because it lacked a function-by-function assessment and was "inconsistent with the evidence of record revealing many normal and mild psychiatric findings." *Id*.

The ALJ also appropriately considered and explained the evaluation of Plaintiff's treatment records and treating physicians' opinions. Although Plaintiff argues that her doctors' opinions establish her disability, ECF 17 at 2, 8, the ultimate issue of disability is a determination reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(d) (explaining that the determination of disability is an administrative finding reserved to the Commissioner, and not a medical opinion). Therefore, the ALJ permissibly gave little weight to the opinions of Drs. Lutta and Natividad, and partial weight to the opinions of Drs. Paik, Cuttica, Ojiegbe, Balint, and Brooks. Tr. 32.

The ALJ gave little weight to the opinions of Drs. Lutta and Natividad because they were inconsistent with the record. Tr. 32. For example, the ALJ noted that Dr. Natividad opined that Plaintiff could never lift even less than ten pounds, *id.* (citing Tr. 867), but Plaintiff testified at the hearing that she could lift "Without any problems, probably 15 pounds," Tr. 64, and that Dr. Lutta opined that Plaintiff could stand or walk for less than two hours in an eight-hour workday, Tr. 32 (citing Tr. 871-72), but that Plaintiff "frequently presented with a normal gait upon examination," *id*. Dr. Lutta also opined that, while Plaintiff was "not capable of returning to her usual driving position," she could perform "sedentary work." Tr. 597. However, the ALJ found that the "medical evidence of record generally supports the opinion that the claimant can perform a range of light exertional work," and correctly stated that "the issue of disability or inability to work is reserved to the Commissioner." Tr. 32.

For similar reasons, the ALJ permissibly gave partial weight to the other five physicians' opinions in the record, including Dr. Paik's opinion that Plaintiff could perform "light duty" work, such as "a desk job," Tr. 566-67; Dr. Cuttica's opinion that Plaintiff had a percentage of permanent partial disability according to the American Medical Association guidelines, Tr. 648, 661 ("7% whole person, 18% lower extremity, 25% foot and ankle"); Dr. Ojiegbe's opinion that Plaintiff could return to light duty work, Tr. 569; Dr. Balint's opinion that Plaintiff had "a 5% impairment of the whole person," Tr. 394; and Dr. Brooks's opinion that Plaintiff could return to work, Tr. 570. The ALJ further noted that these opinions were not accompanied by function-by-function assessments of Plaintiff's ability to perform work-related activities, and so were of little assistance in formulating Plaintiff's RFC. Tr. 32.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456

(4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find that the ALJ supported the RFC determination with substantial evidence.

At step four, relying on the vocational expert's ("VE's") testimony, the ALJ determined that Plaintiff was capable of performing her past relevant work of security supervisor and satellite project coordinator. Tr. 33. The ALJ made an alternative step five finding, and, again relying on the VE's testimony, determined that a person with Plaintiff's RFC could perform a restricted range of light jobs existing in the significant numbers in the national economy, including router, marker, and mail clerk (non-postal). Tr. 33-34.

In response to additional hypotheticals posed by the ALJ, the VE testified that there were jobs available in the national economy for a person with the same RFC but at a sedentary level, instead of at a light level. Tr. 75 (proffering the representative occupations of document preparer, order clerk, and charge account clerk); that jobs were available if the hypothetical included a limitation to "simple, routine, repetitive tasks, with no production rate for pace of work," Tr. 75-76 (clarifying that all the jobs at the light and sedentary levels would remain for this hypothetical except for the satellite project coordinator); and that the jobs proffered would further remain if the hypothetical person "also required the option to alternate between the sitting and standing position every 30 minutes," Tr. 76-77 (noting that there would be a ten-percent reduction in the numbers for the position of marker).

Plaintiff argues that the ALJ ignored some of the VE's testimony. ECF 17 at 4-5. Specifically, plaintiff contends that the VE testified that Plaintiff could not perform any of her previous jobs, or the jobs proffered at the hearing, with the restrictions given by her doctors. *Id.* At the hearing, Plaintiff's attorney asked the VE about three additional, separate limitations added to the ALJ's hypothetical: (1) fifteen-minute unscheduled work breaks every three hours, Tr. 77; (2) feet elevated while seated, Tr. 78; and (3) missing work two times per month, Tr. 79.[3] In response, the VE testified that there would be no work for an individual with any of those limitations. Tr. 77-79. "For a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that sets forth all of the claimant's impairments," and the ALJ "has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question." *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. 1999) (unpublished table decision). The ALJ's first hypothetical question to the VE, which accurately incorporated the RFC assessment in the ALJ's decision, was permissible without including any additional limitations that the ALJ

---

[3] The Court notes that the first two limitations seem to be based on Dr. Lutta's Arthritis RFC Questionnaire. Tr. 870-72. Dr. Lutta's opinion that Plaintiff would require 15-minute unscheduled breaks every three hours, Tr. 872, does not account for regularly scheduled breaks every two hours in an eight-hour job, *see* SSR 96-9p (noting that a normal workday includes a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals, and that the occupational base is not eroded where limitations may be accommodated by these regularly scheduled breaks). Dr. Lutta additionally opined that, if Plaintiff had a sedentary job, she would need to elevate her legs twenty percent of the time. Tr. 872. The VE did not testify whether jobs were available for a person who needed to elevate her feet twenty percent of the seated workday.

did not deem valid. Essentially, Plaintiff is arguing that the ALJ's RFC assessment should have included the additional limitations posed by her attorney at the hearing. However, the ALJ's RFC assessment was adequate, as discussed above. Therefore, the hypothetical based on the RFC was equally valid. Because the VE's testimony constitutes substantial evidence to support the conclusion, the ALJ's determination must be affirmed.

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF 15, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States District Judge